UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 03-21072-CIV-JORDAN

JERRY FRANK TOWNSEND, by and )
through his limited guardian, DONALD )
SPARADO, ESQ. )
)
      Plaintiff )
)
vs. )
)
CITY OF MIAMI, a municipality; JAMES )
E. BOONE and BRUCE CHARLES )
ROBERSON, individually, as former police )
officers for the CITY OF MIAMI; )
HOWARD V. GARY, individually, as a )
former City Manager for the CITY OF )
MIAMI; CESAR H. ODIO, individually, as )
a former City Manager for the CITY OF )
MIAMI; DONALD WARSHAW, )
individually, as a former City Manager for )
the CITY OF MIAMI, )
)
      Defendants )

## ORDER ON MOTIONS TO DISMISS

Jerry Frank Townsend, through his limited guardian, Donald Sparado, Esq., sues the City of Miami, James E. Boone (a former City of Miami police officer), Bruce Charles Roberson (a former City of Miami police officer and Officer Boone's partner), Howard V. Gary (manager of the City of Miami from 1981 to 1984), Cesar H. Odio (manager of the City of Miami from 1985 to 1986), and Donald Warshaw (manager of the City of Miami from October of 1998 to April of 2000) for violations of his constitutional rights under 42 U.S.C. § 1983, for violations under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, et seq. The claims arise out of Mr. Townsend's mistaken arrests and convictions for several rape/murders and consequent imprisonment for 22 years.

Currently pending are the defendants' motions to dismiss the second amended complaint. For the reasons which follow, those motions [D.E. 76, 77, and 81] are GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

The Rule 12(b)(6) standard is a familiar one. The defendants' motions to dismiss the second amended complaint should not be granted unless it appears beyond doubt that Mr. Townsend could prove no set of facts in support which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-6 (1957). The complaint's well-pleaded factual allegations are accepted as true, and all reasonable inferences from those allegations are drawn in favor of the plaintiff. *See, e.g., Cotton v. Massachusetts Mut. Lfie Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005); *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). Conclusory allegations or legal conclusions, however, need not be accepted at face value. *See, e.g., Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005).

The facts set forth below, therefore, are taken from the well-pleaded allegations contained in the second amended complaint.

### A. THE ARREST, INTERROGATION, AND CONFESSION

On September 5, 1979, Officer Roberson, without probable cause, arrested Mr. Townsend for the sexual battery of Pilbyan Beckford. The arrest took place in the general vicinity of the murder of Wanda Virga, a crime Officer Boone was investigating. At the time of the arrest, Mr. Townsend, a 27-year-old African American, had the mental capacity of a seven- or eight-year-old child, and had a severe speech impediment.

On the way to the Miami Police Department, Officer Roberson contacted his partner, Officer Boone, to arrange the interrogation of Mr. Townsend for the homicide, and also contacted Deputy Sheriffs Anthony Fantigrassi and Mark Schlein to arrange further interrogation for a number of crimes that had taken place in Broward County.

From September 6-10, 1979, Officers Boone and Roberson and Deputies Fantigrassi and Schlein – as part of a conspiracy to coerce a mentally retarded man into making incriminating statements about crimes that he did not commit – conducted a four day "aggressive," "coercive," and "improper" interrogation of Mr. Townsend that they knew was in violation of state law, federal

law, and accepted police practices. During the interrogation, they intentionally and improperly stopped and started the audio cassette tapes for the purpose of coaching Mr. Townsend and "either purging the tapes of exculpatory evidence or not allowing exculpatory evidence to be tape recorded."[1] While the audio cassette tape was turned off, they took Mr. Townsend to various crime scenes, showed him pictures of the crime scenes, and "provided him with information concerning these crimes in order to assist him in telling the story they wished him to tell on tape." They also altered the audio cassette tapes for the purpose of creating a false and incomplete record. By the end of the interrogation, Mr. Townsend had implicated himself in homicides in Ft. Lauderdale (located in Broward County), Miami, Tampa, and San Francisco.

Based upon the coerced statements taken by from Mr. Townsend, "as well as false statements made by [Officers Boone and Roberson and Deputies Fantigrassi and Schlein] within the criminal courts to the prosecutors, [Mr. Townsend's] counsel, and the public," Mr. Townsend was charged by indictment with the rape/murders of Ernestine German, Cathy Moore, Terry Cummings, Sonja Marion, Naomi Gamble, Thelma Jean Bell, and Barbara Ann Brown in Ft. Lauderdale and with the murders of Wanda Virga and Dorothy Gibson and the rape of Pilbyian Beckford in Miami-Dade County.

## B. THE CONVICTIONS

Mr. Townsend proceeded to trial in Broward County. On July 31, 1980, he was convicted of murdering Naomi Gamble and Barbara Brown. He was acquitted of the murder of Thelma Bell. Before, during, and after the trial, Officers Boone and Roberson and Deputies Fantigrassi and Schlein provided false material statements (including statements under oath) to the criminal courts, prosecutors, Mr. Townsend's counsel, and the public. They stated that Mr. Townsend had committed the murders with which he had been charged. They also withheld and/or concealed other evidence that would have negated the evidence they had fabricated, and intentionally and/or incompetently failed to investigate or consider exculpatory evidence.

---

[1] I consider Mr. Townsend's allegations as to the withholding of favorable or exculpatory evidence to be part of his coerced confession claim, rather than as a separate claim under *Brady v. Maryland*, 373 U.S. 83 (1963).

3

On October 4, 1982, Mr. Townsend pled guilty to the Moore and Cummings murders in Broward County. The state filed a nolle prosequi as to the German murder. On December 6, 1982, Mr. Townsend pled guilty to the Virga and Gibson murders and the Beckford sexual battery in Miami-Dade County. At the time of the plea, Ms. Beckford was unavailable as a state witness. "The coerced false confessions were used not only to secure guilty verdicts against [Mr. Townsend], but also to induce him to plead guilty to the Miami homicides and rape." The coerced false confessions were also used to sentence Mr. Townsend to two consecutive life sentences (in exchange for the state waiving the death penalty). Throughout his incarceration, Mr. Townsend was classified as a sex offender (which resulted in limited visitation and barred visits from his young daughter) and as a maximum security/close custody prisoner (which resulted in most activities being done while handcuffed and activities outside the cell being extremely limited).

Mr. Townsend alleges that the City itself, and former City Manager Gary – in addition to Officers Boone and Roberson – "knew or should have known," based upon the results of investigations, that Mr. Townsend was not the perpetrator of the crimes in Broward County and in Miami. According to the complaint, the rapes and murders in Broward County continued after Mr. Townsend's arrest and before and after his criminal trial. The City, former City Manager Gary, and Officers Boone and Roberson "failed to reasonably inform themselves of the facts and failed to promptly withdraw the obviously flawed charges against Mr. Townsend."

## C. THE SUBSEQUENT EXONERATION

In 1998 and 1999, Detective John Curcio and other members of the Ft. Lauderdale Police Department reopened the Marion, Moore,[2] and Tukes murder cases after reviewing the crime scene evidence and comparing it to Mr. Townsend's taped confession. Detective Curcio requested that the Broward County Sheriff's Crime Laboratory examine certain DNA evidence from the Marion crime scene. The Crime Lab matched DNA taken from sperm on Sonja Maron's shorts to that of Eddie Lee Mosley, which also matched DNA taken in the Shandra Whitehead murder (for which Frank Lee Smith had been wrongfully convicted). Broward County Sheriff Ken Jenne then ordered further

---

[2]Mr. Townsend had been convicted of the Moore murder.

4

DNA testing for the other Broward County cases in which Mr. Townsend was convicted. Those tests also matched victims to Mr. Mosley.

On April 20, May 2, and May 14, 2001, courts in Broward County entered orders granting the state's motions to vacate Mr. Townsend's convictions and sentences in the Cummings, Gamble, Brown and Moore murder cases. On June 15, 2001, as a result of these orders and the investigative work of Lieutenant George Cadavid and Detective Confessor Gonzalez of the City of Miami Police Department, a Miami-Dade court entered orders vacating Mr. Townsend's convictions in the Virga and Gibson murders and the Beckford sexual battery.

On June 16, 2001, after having been incarcerated for about 22 years, Mr. Townsend was released from prison.

### D. THE ALLEGED RACKETEERING

The civil RICO claims are brought under 18 U.S.C. § 1964, which allows civil remedies for violations of 18 U.S.C. § 1962.

Mr. Townsend alleges that former City Managers Gary, Odio, and Warshaw had the responsibility for the City of Miami Police Department, but failed to provide proper oversight, and failed to stop police officers like Officers Boone and Roberson who filed false charges, presented false sworn testimony, fabricated and tampered with evidence, obstructed discovery, and participated in a cone of silence. As a result, the second amended complaint alleges, former City Managers Gary, Odio, and Warshaw violated 18 U.S.C. § 1503 and/or 1512. These defendants also conspired with Officers Boone and Roberson and Deputies Fantigrassi and Schlein to commit (or have others commit) the offenses of obstruction of justice and witness tampering. Despite their knowledge about the deficiencies in the City of Miami Police Department – knowledge obtained through consent decrees and investigations – these defendants failed to adequately address the deficiencies (including deficiencies in training, supervision, and discipline) and failed to promote and hire minorities. They also approved the hiring of individuals who were incompetent or unfit to serve as police officers.

The City of Miami Police Department is alleged to be an "enterprise" that the individual defendants acquired or maintained control of through a pattern of racketeering activities, in violation of 18 U.S.C. § 1962(b), and participated in the enterprise's affairs through the same pattern, in

violation of 18 U.S.C. § 1962(c).[3] As a result of these activities – including but not limited to presenting a fabricated tape-recorded statement at Mr. Townsend's criminal trial – Mr. Townsend was wrongfully convicted and imprisoned. During the trial, moreover, Officers Boone and Roberson and Deputies Fantigrassi and Schlein had access to evidence which excluded Mr. Townsend as the perpetrator of the crimes that were the subject of his coerced confession, but withheld such evidence.

During the tenure of former City Managers Gary, Odio, and Warshaw, there existed a pattern and practice of engaging in false arrests and imprisonment, false prosecution, excessive use of force, covering up police misconduct, creating misleading and incomplete records of conduct, and obtaining coerced confessions. Furthermore, from 1961 to 2003, the City has engaged in a pattern and/or practice of misconduct (e.g., deficient training, cover-ups of problematic shootings, maintaining secret files of citizens' complaints and keeping them separate from Internal Affairs' official complaints, bribery). The City's failure to properly train and/or supervise and/or discipline officers was allegedly the proximate cause of the deprivation of Mr. Townsend's rights, and amounted to deliberate indifference.

## II. THE CLAIMS

Counts I and II are claims under 42 U.S.C. § 1983 against Officers Boone and Roberson, respectively, for violations of Mr. Townsend's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.[4] Count III is a conspiracy claim under § 1983 against Officers Boone and Roberson. Count IV is a claim under § 1983 against the City.

Count V is a RICO conspiracy claim under 18 U.S.C. § 1962(d) against all the individual defendants. Count VI is a RICO claim under 18 U.S.C. § 1962(b) against Officers Boone and Roberson and former City Manager Gary. Count VII is another RICO claim under 18 U.S.C. § 1962(c) against all the individual defendants.

---

[3]The activities include obstructing justice, fabricating evidence, tampering with witnesses, and coercing confessions.

[4]In his response to the motion to dismiss filed by Officers Boone and Roberson, Mr. Townsend disclaims any reliance on the substantive due process component of the Fourteenth Amendment.

### III. DISCUSSION

All of the defendants have filed motions to dismiss. The best way to address the motions, and Mr. Townsend's responses, is claim by claim. I address, however, only the arguments made by the defendants. There may be other issues raised by Mr. Townsend's claims, but if they have not been presented, I have not addressed them.

#### A. COUNTS I, II, & III: § 1983 CLAIMS AGAINST OFFICERS BOONE AND ROBERSON

Officers Boone and Roberson move to dismiss the § 1983 claims against them on various grounds. Their motions are granted in part, and denied in part, as follows.

##### 1. ABSOLUTE IMMUNITY FOR FALSE TESTIMONY

Any portions of the § 1983 claims in Counts I-III based on false testimony under oath by Officers Boone and Roberson before the grand jury, at pre-trial depositions, or Mr. Townsend's trial are dismissed with prejudice. It is clear that a witness has absolute immunity for such testimony under § 1983. *See Jones v. Cannon,* 174 F.3d 1271, 1286 (11th Cir. 1999). Such testimony, moreover, cannot be used as evidence of prior membership in a conspiracy under § 1983. *See Rowe v. City of Ft. Lauderdale,* 279 F.3d 1271, 1283 (11th Cir. 2002). But, as explained below, this does not mean that all of Mr. Townsend's claims must be dismissed.

To the extent that Officers Boone and Roberson make additional arguments in support of their absolute immunity claims (e.g., that there were intervening acts which broke the chain of causation), I reject them at this time because they are wholly conclusory, consisting of a line or two of argument followed by a citation to a case but without any analysis whatsoever and without any adherence to the allegations (and only the allegations) in the second amended complaint.

##### 2. QUALIFIED IMMUNITY

Officers Boone and Roberson contend that they are entitled to qualified immunity on the § 1983 claims. Before addressing their arguments, I note that at times those arguments are based on a failure to acknowledge Mr. Townsend's allegations and read them in the light most favorable to Mr. Townsend. To the extent that Officers Boone and Roberson simply make generalized attacks on the second amended complaint, unsupported by analysis or case law, I do not address those arguments.

When analyzing a qualified immunity, a court must first ask whether, taken in the light most favorable to the plaintiff, the "facts alleged show the officer's conduct violated a constitutional right."

*Brosseau v. Hagen,* 543 U.S. 194, 198 (2004). If the answer to that first question is yes, then a court must determine whether the right in question was "clearly established," that is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Groh v. Ramirez,* 540 U.S. 551, 564 (2004). I will analyze both questions for each constitutional claim.

**COERCED CONFESSIONS.** The second amendment complaint sufficiently (and more than sufficiently) alleges that Officers Boone and Roberson coerced false and involuntary confessions from Mr. Townsend in violation of the Fifth Amendment (as incorporated by the Fourteenth Amendment). Mr. Townsend alleges that he had the mental capacity of a seven- or eight-year-old and had a speech impediment, and that Officers Boone and Roberson (1) aggressively questioned him for four days, (2) coached him into giving incriminating answers, (3) provided him with information so he could tell the story they wanted him to tell, (4) took him to crime scenes to suggest answers, and (5) stopped the tape so as to purge exculpatory evidence or information *See generally Jackson v. Denno,* 378 U.S. 368, 385-86 91964); *Fikes v. Alabama,* 352 U.S. 191, 195-96 (1957). I understand that the Fifth Amemdment is not violated unless a coerced or otherwise involuntary confession is used against the individual who was questioned. S*ee Chavez v. Martinez,* 538 U.S. 760, 768 (2003) (plurality opinion); *id.* at 777-79 (Souter & Breyer, JJ., concurring). But here the second amended complaint alleges that the coerced confessions were used to obtain murder indictments against Mr. Townsend, and further alleges that the confessions were used at trial against Mr. Townsend and to obtain jury convictions on the Brown and Gamble murders. *Chavez* therefore does not bar Mr. Townsend's Fifth Amendment claim.[5]

---

[5]If discovery shows that some of the confessions were not used against Mr. Townsend in the way that *Chavez* requires for purposes of the Fifth Amendment, Officers Boone and Roberson will be free to move for summary judgment on qualified immunity grounds.

As noted earlier, Mr. Townsend has disclaimed any reliance on the substantive due process component of the Fourteenth Amendment with respect to the coerced confessions. If he had claimed a substantive due process violation of the Fourteenth Amendment under the "shocks the conscience" standard, *see Chavez,* 538 U.S. at 779-80 (opinion of Souter, J., for majority of the Court), such a claim would not survive qualified immunity analysis. Even if the conduct of Officers Boone and Roberson "shocked the conscience," there was no clearly established law as of September of 1979. *See Tinker v. Beasley,* 429 F.3d 1324, 1327 (11th Cir. 2005) (addressing similar claim and noting that the Supreme Court and the Eleventh Circuit have provided "scant guidance" as to what conduct "shocks the conscience").

8

As to the second qualified immunity prong, under the facts alleged, it would have been clear to a reasonable officer in September of 1979 that such conduct was unlawful under the circumstances and rendered Mr. Townsend's confessions involuntary, particularly since the second amended complaint is silent as to whether Mr. Townsend was given his *Miranda* rights. *See, e.g., Fikes*, 352 U.S. at 196-97; *Jurek v. Estelle*, 593 F.2d 672, 678-79 (5th Cir. April 23, 1979). I also note that my ruling is consistent with other federal courts which have denied qualified immunity on coerced confession claims under similar facts. *See, e.g., Wilson v. Lawrence County*, 260 F.3d 946, 953-54 (8th Cir. 2001).[6]

**MALICIOUS PROSECUTION.** Mr. Townsend easily states a claim for malicious prosecution, a theory which has been recognized by the Eleventh Circuit under the Fourth Amendment. Mr. Townsend has pled all of the elements of a constitutional malicious prosecution claim, as required by cases like *Uboh v. Reno*, 141 F.3d 1000, 1003 (11th Cir. 1998), and *Kingsland v. City of Miami*, 382 F.3d 1220, 1234-35 (11th Cir. 2004). Officers Boone and Roberson do not argue that the law on this claim was not clearly established at the relevant time(s), so I do not address that issue.

**CONSPIRACY.** With respect to Mr. Townsend's conspiracy claim (Count III), Officers Boone and Roberson argue only that the allegations in the second amended complaint are insufficient and that Mr. Townsend does not adequately state what constitutional rights they supposedly conspired to violate. I disagree on the first point, but agree on the second.

The Eleventh Circuit recognizes a claim for conspiracy under § 1983, and what the plaintiff must show is that the defendants reached an understanding to violate his constitutional rights. *See, e.g., Schultz v. Ashcroft*, 2006 WL 869869, *5 (11th Cir. 2006). Mr. Townsend has adequately done that here, and his allegations are not conclusory, because he alleges that Officers Boone and Roberson were partners investigating the same crimes, conducted the interrogations together, and schemed to fabricate evidence (e.g., the coerced confessions) against Mr. Townsend.

Officers Boone and Roberson are correct, however, that Mr. Townsend has made conclusory allegations that the conspiracy was to violate not only his due process rights and his right to be free

---

[6]Contrary to the argument made by Officers Boone and Roberson, the fact that a guilty plea may generally not be impeached in collateral proceedings to set aside a conviction does *not mean* that a person cannot sue under § 1983 once his guilty plea has been set aside.

9

from an unlawful search and seizure (as alleged in the malicious prosecution claim) – which are sufficiently pled – but also his rights to equal protection, freedom of association, privacy, and redress. These latter alleged objectives are insufficiently pled and are conclusory in nature. Mr. Townsend's § 1983 conspiracy claim stands only insofar as it alleges that Offices Boone and Roberson conspired to deprive him of his due process and Fourth Amendment rights.

### 3. STATUTE OF LIMITATIONS [7]

I cannot say at this early stage of the proceeding that Mr. Townsend's § 1983 claims arising from the allegedly coerced confessions, the malicious prosecution, or the conspiracy are barred by the applicable statute of limitations. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), and its progeny do not necessarily require a conviction to be set aside before a § 1983 claim based on a coerced confession accrues. This is because coerced confessions are subject to harmless-error analysis, and there may be cases where a challenge to a confession would not necessarily call a conviction into question. *See, e.g., Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996); *O'Neill v. Burks*, 12 Fed Appx. 407, 408 (7th Cir. 2001). Where, however, a conviction is based solely, or substantially, on a coerced confession – so that the harmless-error doctrine would not save the conviction – then a § 1983 claim based on the coerced confession does not accrue under *Heck* until the conviction is set aside. *See, e.g., Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 559-60 (10th Cir. 1999); *Walden v. City of Chicago*, 391 F.Supp.2d 660, 675 (N.D. Ill. 2005); *Patterson v. Burge*, 328 F.Supp.2d 878, 896-97 (N.D. Ill. 2004); *Wilson v. Buford*, 2003 WL 21212566, *1 (N.D. Tex. 2003).

A reading of the second amended complaint indicates that Mr. Townsend's confessions were used as evidence against him at trial and/or were used to obtain his guilty pleas. Reading the complaint in the light most favorable to Mr. Townsend, the confessions apparently played a substantial role in Mr. Townsend's convictions. It is procedurally improper for Officers Boone and Roberson to assert, contrary to Mr. Townsend's allegations, that the confessions played no part in the guilty pleas. For example, it is possible that the state's factual proffers in support of the guilty pleas included Mr. Townsends' confessions. In sum, it would be inappropriate at the Rule 12(b)(6) stage to rule that the coerced confession claims accrued at the time the confessions were taken, and not when Mr.

---

[7] This discussion also applies to the City, which, like Officers Boone and Roberson, raised a statute of limitations argument.

Townsend's convictions were set aside. "A more fulsome exploration of the evidence underlying the jury verdict [or guilty pleas] may (or may not) fairly invite a second look at this issue at the summary judgment stage." *Walden*, 391 F. Supp. 2d at 675.

Insofar as Officers Boone and Roberson ask me to adopt *Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001) – which holds that in a guilty plea scenario a constitutional claim accrues at the time of the alleged violation because the fruits of the violation are not "used" against the defendant – I decline to do so at this time on an undeveloped record. Viewing the allegations in the light most favorable to Mr. Townsend, the coerced confessions were used to secure his guilty pleas, and that may mean the confessions were used (wholly or in part) for the state's factual proffers.

### B. COUNT IV: § 1983 CLAIM AGAINST THE CITY[8]

The City's motion to dismiss Count IV is denied. There is no heightened pleading requirement for a municipal liability claim under § 1983, *see Leatherman v. Tarrant County*, 507 U.S. 163, 164-68 (1993), and Mr. Townsend has easily plead such a claim in his second amended complaint (e.g., under theories of pattern and practice of misconduct and failure to train) with respect to the coerced confessions under the Fifth Amendment and malicious prosecution under the Fourth Amendment. If there was no joint investigation by Broward and Miami-Dade Counties, the City may be right that any municipal liability under § 1983 can only rest on the Miami-Dade convictions, but it is far too early to speculate on that issue.

### C. COUNTS V-VII: THE RICO CLAIMS[9]

The RICO claims alleged by Mr. Townsend are based on violations of 18 U.S.C. §§ 1962(d) (conspiracy under Count V), 1962(b) (Count VI), and 1962( c) (Count VI). Each of these statutory subsections requires "a pattern of racketeering activity," which in turn "requires at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The term "racketeering activity" is defined as including acts which violate certain federal statutes, including the two cited in Mr. Townsend's

---

[8] Mr. Townsend concedes that he is not seeking punitive damages against the City.

[9] Mr. Townsend concedes that the City is not a defendant in Counts V-VII.

complaint: 18 U.S.C. § 1503 (obstruction of justice) and 18 U.S.C. § 1512 (witness tampering). *See* 18 U.S.C. § 1961(1)(B).

The defendants argue that Mr. Townsend's RICO claims must be dismissed because the acts alleged do not violate the federal obstruction of justice and witness tampering statutes. I agree, and dismiss Counts V-VII without prejudice.

### 1. PREDICATE ACTS DIRECTED TOWARDS MR. TOWNSEND.

Mr. Townsend alleges that Officers Boone and Roberson, in addition to coercing a false confession from him by wearing him down and taking him to various crime scenes, and manufacturing and fabricating the false confession, conspired with Deputies Fantigrassi and Schlein to make false statements under oath that caused his indictments in one case in Broward County and two cases in Miami-Dade County in September of 1979. These individuals falsely testified under oath (a) that they did not know that Mr. Townsend was mentally retarded, (b) that Mr. Townsend had freely waived his rights and that the confession was not coerced, (c) that Mr. Townsend had made other statements not on the tape recording; and (d) that Mr. Townsend was the perpetrator (when they knew he was not). Officers Boone and Roberson also conspired with Deputies Fantigrassi and Schlein to conceal their wrongdoing in Mr. Townsend's case.

The problem for Mr. Townsend is that these alleged acts by Officers Boone and Roberson and Deputies Fantigrassi and Schlein took place with respect to *state* investigations, indictments, and prosecutions of *state* crimes (i.e., rapes and murders) in Broward County and Miami-Dade County. Given these allegations, there is no violation of 18 U.S.C. §§ 1503 or 1512.

Turning to § 1503(a), the last (or omnibus or catch-all) clause of this section – the clause relied upon by Mr. Townsend – prohibits a person from "corruptly, by threats or force, or by any threatening letter or communication, influenc[ing], obstruct[ing], or imped[ing] . . . the due administration of justice." Although this catch-all clause is more broad in scope than the preceding clauses of § 1503(a), it is not without limits. It requires a "nexus in time, causation, or logic between an act and a judicial proceeding." Stated differently, the "action must be with intent to influence judicial or grand jury proceedings." *United States v. Aguilar*, 515 U.S. 593, 598-99 (1995).

12

As the Eleventh Circuit has explained, § 1503 is generally "only applicable to *federal* proceedings," *Green Leaf Nursery v. E.I. Dupont de Nemours and Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003) (emphasis added), and *Aguilar* requires a *"federal* nexus," *United States v. Veal*, 153 F.3d 1233, 1250 (11th Cir. 1998) (emphasis added). Here there is no allegation that there was ever a *federal* grand jury or other *federal* judicial proceeding underway. There is also no allegation that any such federal proceeding was reasonably foreseen or anticipated by the defendants. *See, e.g., United States v. Schwartz*, 283 F.3d 76, 105-06 (2d Cir. 2002) (to violate § 1503, a federal judicial proceeding must be underway, or at least reasonably anticipated or foreseen by defendant); *United States v. Messerlian*, 832 F.3d 778, 794 (3d Cir. 1987) (same), *abrogated on other grounds, Graham v. Connor*, 490 U.S. 386 (1989). All of the acts allegedly committed by Officers Boone and Roberson, and Deputies Fantigrassi and Schlein, took place with respect to Mr. Townsend's *state* prosecutions for rape/murder. As a result, the alleged acts of Officers Boone and Roberson and Deputies Fantigrassi and Schlein do not violate the catch-all clause of § 1503(a). *See, e.g., Bologna v. Allstate Ins. Co.*, 138 F. Supp.2d 310, 321 (E.D.N.Y. 2001) (erasure of portion of tape-recorded telephone conversation and submission of altered tape to court during state judicial proceeding did not violate § 1503, as "none of the allegations relate[d] to proceedings in federal court"); *Dangerfield v. Merrill Lynch*, 2003 WL 2227956, *8 (S.D.N.Y. 2003) (citing cases). Mr. Townsed has not cited any cases holding that the type of conduct alleged here violates § 1503(a)'s catch-all clause even if there is only a state judicial proceeding.

It is not enough that the defendants may have generally agreed to lie about their alleged conduct towards Mr. Townsend. The standard articulated in *Aguilar* "cannot encompass every agreement to deceive regarding the commission of a crime. Otherwise, every criminal who conspired at any time and in any way to conceal evidence of his or her crime would be susceptible to charges of conspiracy to obstruct justice, a result that would take us far beyond the federal interest in 'preserving the integrity of a judicial proceeding' that . . . animate[s] § 1503[.]" *United States v. Vaghala*, 169 F.3d 729, 733 (11th Cir. 1999).[10]

---

[10]Mr. Townsend refers in one of his memoranda to the fact that the FBI performed the initial DNA testing that exonerated him and later assisted the City of Miami in its investigation/review of his case. These facts are not alleged in the second amended complaint, however, and therefore

The same deficiencies exist with respect to the alleged predicate acts under § 1512(b)(3).[11] The Eleventh Circuit has held that federal jurisdiction depends on "the *possible* existence of a federal crime and a defendant's intention to thwart an inquiry into that crime" with respect to "the *transmission* of information to federal law enforcement agents and/or a federal judge concerning a possible federal crime." *Veal,* 153 F.3d at 1251 (emphases in original). The second amended complaint does not contain any allegations that the defendants made false statements, or prevented another from making a relevant communication, to a federal law enforcement agent or to a federal judge.

Mr. Townsend's reliance on the Eleventh Circuit's decision in *Veal* is misplaced. Although *Veal* upheld convictions under § 1512(b)(3) for misleading statements made to *state* investigators, there was at least a homicide state investigation underway as to how a suspected drug dealer died while in police custody, 153 F.3d at 1237, and it was during that investigation that the defendants made misleading statements. There are no allegations in Mr. Townsend's complaint that Officers Boone and Roberson or Deputies Fantigrassi and Schlein made misleading statements during any investigation into their conduct or Mr. Townsend's cases. On this record, then, there is no inference to be drawn that any false or misleading statements or testimony would possibly be subsequently transferred to federal authorities. *See id.* at 1251-52.

### 2. PREDICATE ACTS DIRECTED TOWARDS OTHERS

At times Mr. Townsend alleges that former City Managers Gary, Odio, and Warshaw acted unlawfully with respect to other individuals. To the extent that Mr. Townsed bases his RICO claims on the allegations that former City Managers Gary, Odio, and Warshaw acted improperly (e.g., withholding and concealing evidence, presenting false evidence, destroying evidence of the illegal

---

cannot be used to oppose the defendants' motions to dismiss. *See Aldana,* 416 F.3d at 1247 (allegations found in a plaintiff's brief or memorandum cannot be used to determine whether complaint survives a Rule 12(b)(6) motion).

[11] The complaint cites to § 1512 generally, but in his memoranda Mr. Townsend indicates that he is relying on subsection (b)(3), which in relevant part makes it criminal for a person to "engage[ ] in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information *relating* to the commission of a Federal offense[.]"

conduct of their agents) in the criminal investigations and/or prosecutions of other individuals, he has failed to sufficiently allege causation and injury. "[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand too remote a distance to recover." *Green Leaf Nursery,* 341 F.3d at 1307 (citation and internal quotation marks omitted).

In light of my resolution of the RICO claims, it is unnecessary to address the defendants' other arguments.

### IV. CONCLUSION

The defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART, as set forth above. Counts V-VII are dismissed without prejudice in their entirety. Only portions of Counts I-IV are dismissed. A scheduling report will be issued shortly.

DONE AND ORDERED in chambers at Miami, Florida, this 17th day of April, 2006.

*[signature]*
Adalberto Jordan
United States District Judge

cc: Magistrate Judge Klein and counsel of record.